# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**IRON WORKERS LOCAL 597 PENSION FUND, CLARENCE T. TYLER, BILL BRADLEY, NEAL BULLARD, MARK S. WOOD, HENRY BECKWITH, BENNY CLEGHORN,** *as Trustees of Iron Workers Local 597 Pension Fund and as Trustees of Ironworkers Local 597 Joint Apprenticeship and Training Fund,*

**SOUTHEASTERN IRON WORKERS HEALTH CARE PLAN, TRUSTEES OF SOUTHEASTERN IRON WORKERS HEALTH CARE PLAN,**

**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS LOCAL #597,**

                      **Plaintiffs,**

**-vs-**                                          **Case No. 6:08-cv-905-Orl-31KRS**

**CHAMPION STEEL OF CENTRAL FLORIDA CORPORATION,**

                      **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motion:

> **MOTION: PLAINTIFFS' SECOND AMENDED MOTION FOR ENTRY OF FINAL JUDGMENT (Doc. No. 17)**
>
> **FILED:** January 9, 2009
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Plaintiffs Iron Workers Local 597 Pension Fund ("Pension Fund"), six trustees of the Pension Fund and Local 597 Joint Apprenticeship and Training Fund ("Apprenticeship Fund"), Southeastern Iron Workers Health Care Plan ("Health Care Fund") and its trustees, and International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers Local 597 ("Local 597") sued defendant Champion Steel of Central Florida Corporation ("Champion") for failing to make contributions to the various benefit plans and for failing to remit union dues pursuant to a collective bargaining agreement. Presently before the Court is Plaintiffs' second amended motion for default judgment. Champion has not responded to the motion.

In support of their second amended motion for default judgment, Plaintiffs submit the following evidence: Affidavit of Clarence Thomas Tyler ("Tyler Aff.") and supporting exhibits, Doc. No. 17-2; Affidavit of David Mast ("Mast Aff."), Doc. No. 17-4 at 3; Affidavit of Scott Ernsberger ("Ernsberger Aff."), Doc. No. 17-4 at 6; Affidavit in Support of Attorney's Fees signed by W. Eric Venable ("Venable Aff.") and supporting exhibits, Doc. No. 17-4 at 10; Affidavit as to Reasonable Attorneys Fees of Robert Miles ("Miles Aff."), Doc. No. 15-2.[1]

---

[1] The Miles Affidavit submitted in support of the second amended motion, Doc. No. 17-4 at 24, is not signed. Accordingly, the Court will rely on the previously filed Miles Affidavit, Doc. No. 15-2, which is signed.

**I. PROCEDURAL HISTORY.**

Plaintiffs filed suit on June 6, 2008. Doc. No. 1. Plaintiffs effected service of process by serving Champion's registered agent on August 6, 2008. Doc. No. 8-2. Champion failed to respond to the complaint. The Clerk entered default against Champion on September 3, 2008. Doc. No. 9.

**II. STATEMENT OF FACTS.**

Plaintiffs allege that the named Pension Fund, Apprenticeship Fund and Health Care Fund are multi-employer employee benefit plans within the meaning of ERISA. Doc. No. 1 ¶ 2.A. The named individual plaintiffs are trustees and fiduciaries of the named employee benefit plans. *Id.* ¶ 2.B. Local 597 is an unincorporated labor organization. *Id.* ¶ 2.C.

Champion was obligated to make contributions to the trustees of the multi-employer plans pursuant to the terms of a collective bargaining agreement ("CBA"), which was attached to and made part of the complaint. *Id.* ¶ 6, Doc. No. 1-2. The CBA was effective from August 1, 2006 to July 31, 2009, and was executed by Local 597 and Champion. Doc. No. 1-2. The CBA specifically required Champion to make certain payments to the Apprenticeship Fund, the Pension Fund, and the Ironworkers Health and Welfare Fund. Doc. No. 1-2, Art. 21, 22, 23. The amount of the contributions is set forth in Article 27 of the CBA.

Plaintiffs allege that Champion failed to pay contributions due for work performed in Gainesville, Alachua County, Florida. Doc. No. 1 ¶¶ 7,8.

Tyler is the Business Manager of Local 597. Tyler Aff. ¶ 2. He avers the Ironworker's Health and Welfare Fund referred to in the CBA is Plaintiff Southeastern Iron Workers Health Care Plan. Tyler Aff. ¶ 6. He attests that, at the time the suit was filed, Champion had not paid contributions to the Health Care Fund for the work performed in April 2008, but that Champion subsequently remitted

all amounts due for work performed through August 2008. Tyler Aff. ¶¶ 10, 12. He avers that after the complaint was filed, Champion did not pay contributions or report work performed by employees in September, October and November 2008. *Id.* ¶ 13; *see also* Mast Aff. ¶ 6; Ernsberger Aff. ¶ 6.[2]

The CBA also required Champion to withhold union dues from employee wages for those employees who signed a check-off authorization referral, and to remit those dues to Local 597. Doc. No. 1-2, Art. 24, 27. Plaintiffs allege that Champion has withheld check-off dues from employee wages, but failed to remit those payments to Local 597. Doc. No. 1 ¶ 16. Tyler avers that Champion has now submitted all check-off dues owed for work performed through August 2008. Tyler Aff. ¶ 19.

When a payment to the Pension Fund is paid after the date it is due, the Restated Agreement and Declaration of Trust of Iron Workers Local 597 Pension Fund, Tyler Aff., Ex. D, provides for payment of costs of collection as follows:

> In the event of a delinquency, the Trustees may require the payment by Employers of liquidated damages of twenty (20%) percent of the delinquent amount, interest as set forth herein and of other costs and expenses, including cost of an audit and a reasonable attorney's fee (of not less than 20% of the delinquency) arising out of the verification and collection of such employer[']s delinquent contributions.
>
> In any action under 29 U.S.C. § 1135 to enforce 29 U.S.C. § 1145 in which judgment in favor of the Fund is awarded, the employer shall be required to pay interest at the rate of 15% per annum plus an amount equal to the greater of interest on the delinquent contributions at the rate of 15% per annum or liquidated damages of 20% of the delinquent amount pursuant to 29 U.S.C. § 1132.

*Id.* Sec. 4.5. Tyler avers that the liquidated damages due to the Pension Fund based on the delinquent contributions to that fund are $13,290.64. Tyler Aff., Ex. E. He avers that the interest due on the

---

[2] Because Champion has not submitted work report forms, however, Plaintiffs make no claim for contributions due after the lawsuit was filed. Doc. No. 18 at 6.

delinquent contributions to the Pension Fund and Apprenticeship Fund are $811.89 and to the Health Care Fund are $1,188.03. Tyler Aff., Ex. F. Finally, Plaintiffs present evidence of the attorney's fees incurred, as discussed in more detail below.

**III. APPLICABLE LAW.**

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)(citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. *Id*.

**IV. ANALYSIS.**

*A. Liability.*[3]

The plaintiffs base their ERISA claim on 29 U.S.C. §§ 1132[4] and 1145.[5] In essence, these provisions state that employers who are obligated by a collective bargaining agreement to make contributions to a union trust fund must make such contributions in accordance with the terms of the agreement. Failure to comply with the provisions of § 1145 constitutes a violation of ERISA. *Moore v. Am. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1245 (11th Cir. 2000).

Accepting the factual allegations of the complaint as true, the Pension Fund and Apprenticeship Fund are multi-employer benefit plans subject to ERISA and the individual plaintiffs are trustees and fiduciaries of those plans. The Health Care Fund also is a multi-employer benefit plan subject to ERISA. Champion signed a collective bargaining agreement in which it agreed to make contributions to the Pension Fund, the Apprenticeship Fund, and the Ironworkers Health and

---

[3] I address liability solely under ERISA, as Plaintiffs do not seek damages under Count II of the complaint.

[4] Section 1132(a)(3) provides as follows:

[a] civil action may be brought--by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

[5] Section 1145, provides as follows:

[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Welfare Fund, which in this case is Plaintiff Southeastern Iron Workers Health Care Plan. Champion was delinquent in making contributions to those funds.

These allegations are sufficient to establish that Champion is liable for violations of § 1145 as to the Pension Fund, the Apprenticeship Fund, the Health Care Fund and the respective trustees of the funds.

B. *Damages*.

ERISA provides that when a judgment is entered in favor of a multi-employer plan under § 1145, the court shall award the plaintiffs the following types of damages:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of–
>
>> (I) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### 1. Unpaid Contributions.

Plaintiffs have acknowledged that Champion paid contributions due for work performed through August 2008, and that they are not seeking contributions for work performed thereafter. Therefore, no unpaid contributions are due.

### 2. Interest on Unpaid or Delinquent Contributions.

Prejudgment interest is due on each unpaid contribution from the date on which the contribution was due. *See Carriers Container Council, Inc. v. Mobile S.S. Ass'n, Inc.*, 948 F.2d 1219, 1223-24 (11th Cir. 1991); *Ironworkers Local Union No. 808 v. De La Puerta, Inc.*, No. 6:06-cv-960-Orl-31KRS, 2007 WL 2208833, at *5 (M.D. Fla. July 27, 2007). Under § 1132(g), interest on unpaid contributions is determined by the rate provided under the ERISA plan or, if none, the rate prescribed under 26 U.S.C. § 6621. Interest is at a simple rate and not compounded. *Carriers Container Council*, 948 F.2d at 1225.

The Restated Agreement & Declaration of Trust of Iron Workers Local 597 Pension Fund provides for an interest rate of 15% per annum. Tyler Aff. ¶ 15 & Ex. D, Sec. 4.5.

The Restated Agreement & Declaration of Trust of Iron Workers Local 597 Pension Fund applies only to the Pension Fund. *See* Tyler Aff., Ex. D, Sec. 1.17 ("The terms "Trust", "Trust Fund" and "Fund" as used herein shall mean the entire trust estate of the Iron Workers Local 597 Pension Fund . . . ."). Plaintiffs did not provide evidence of the interest rate under the Apprenticeship Fund or the Health Care Fund. Section 6621 sets a general underpayment rate of the sum of the Federal short-term rate plus 3 percentage points. 26 U.S.C. § 6621(a)(2). The United States Department of Labor publishes a table of interest rates pursuant to § 6621(a)(2). According to this table, the

applicable interest rates are 5% for the period from July 1, 2008, through September 30, 2008; and 6% from October 1, 2008 through December 31, 2008.[6]

Tyler avers that payments are due by the 15th day of the month following the month in which the work was performed. Tyler Aff. ¶ 8. The dates on which each contribution was received are set forth in the Mast Aff. and Ersnberger Aff.

Tyler calculated interest on contributions due to the Pension Fund, the Apprenticeship Fund[7] and the Health Care Fund[8] at 15% per annum. *See* Tyler Aff., Ex. F. As discussed herein, there is no evidence to support the 15% prejudgment interest rate for delinquent payments to the Apprenticeship Fund and the Health Care Fund. Accordingly, I recommend that the Court require Plaintiffs to provide the corrected calculations to the Court based on the governing prejudgment interest rate.

Plaintiffs are also entitled to post-judgment interest. The federal post-judgment interest statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).

### 3. Statutory Penalties.

Pursuant to § 1132(g)(2)(C), Plaintiffs are entitled to "an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court [for unpaid

---

[6] See http://www.dol.gov/ebsa/calculator/a2underpaymentrates.html (last visited on April 9, 2009).

[7] It appears that Plaintiffs use the initials "JAC" to refer to the Apprenticeship Fund.

[8] It appears that Plaintiffs use the initial "SEIWHCP" to refer to the Health Care Fund.

contributions.]" This amount is in addition to the interest on the delinquent contributions. *Carriers Container Council*, 948 F.2d at 1222.

The Restated Agreement & Declaration of Trust of Iron Workers Local 597 Pension Fund provides for 20% liquidated damages. Tyler calculated the liquidated damages owed to the Pension fund as $5,027.88. Tyler Aff., Ex. E. He also calculated liquidated damages owed to the Apprenticeship Fund and the Health Care Fund at 20%, but there is no evidence that these fund documents provide for 20% liquidated damages. Therefore, as to the Apprenticeship Fund and the Health Care Fund, Plaintiffs may recover the amount of prejudgment interest as a statutory penalty.

### 4. Attorney's Fees and Costs.

The Court may award reasonable attorney's fees and costs of the action to an ERISA plan that prevails in an action brought under § 1132(g)(2) to recover delinquent payments. *Carriers Container Council*, 896 F.2d at 1346. In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained." *Id*. at 434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). Thus, the applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and supports the number of hours worked and the rate sought. *Hensley*, 461 U.S. at 433. "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with

sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney. *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990)).

It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorneys' fees. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

a. Hourly Rate.

W. Eric Venable, Esq., is counsel for Plaintiffs. He avers that he was admitted to practice law in Florida in 1972. Venable Aff. ¶ 1. Since 1975, he has limited his practice to representation of multi-employer employee benefit funds and their trustees. *Id.* ¶ 5. Eric Venable's normal rate is $250.00 per hour. *Id.* ¶ 14.

Patrick A. Venable, Esq., also worked on this case. He graduated from law school in 2004 and became a member of the Florida bar in 2006. *Id.* ¶¶ 9, 10, 11. Patrick Venable's normal rate is $125.00 per hour. *Id.* ¶ 14.

Robert A. Miles, Esq., is an attorney who has practiced in Florida since 1980. Miles Aff. ¶ 1. A substantial part of his practice has been in collecting contributions for employee benefit plans. *Id.* ¶ 2. Miles discussed the present case with Eric and Patrick Venable and reviewed the litigation file. *Id.* ¶ 3. He opines that the hourly rate sought by each attorney is reasonable.

Based upon this evidence, I find that the hourly rates sought for work by Eric and Patrick Venable are reasonable in the absence of objection.

b. <u>Reasonable Number of Hours</u>.

Counsel presented a time sheet describing the work performed on this case. Doc. No. 17-4 at 14-16. Although the time sheet does not reflect which attorney performed various tasks, Eric Venable avers that he worked 7.8 hours and Patrick Venable worked 17.4 hours. Venable Aff. ¶ 13. Miles avers that the hours worked were reasonable. Miles Aff. ¶ 5.

Some of the hours worked as reflected in the time sheet are excessive for the task performed. Specifically, an attorney purportedly worked 2.00 hours on June 25, 2008 drafting the certificate of interested persons and corporate disclosure statement. This document is a three-page form, and lists only counsel and the parties. Doc. No. 5. A reasonable time for preparing this document is 0.2 hours. The time sheet also reflects 0.80 hours on June 25, 2008 for dictating an email to the Clerk of Court regarding the pleadings in the case. It is unclear from the time entry what information was requested from the Clerk. Accordingly, I conclude that this time was clerical in nature and not compensable. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)("Of course, purely clerical or secretarial tasks should not be billed . . . regardless of who performs them."). Therefore, I recommend that the Court deduct 2.60 hours at the associate hourly rate.

Plaintiffs do not seek attorney's fees for work performed after October 2008. This is appropriate because the initial motion for default judgment, filed in October 2008, was deficient, as was the first amended motion. *See* Doc. Nos. 13, 16. Accordingly, I recommend that the Court find that 7.8 hours of work by Eric Venable and 14.8 hours of work by Patrick Venable are reasonable.

c.  Lodestar.

The lodestar attorneys' fee in this case is as follows:

| ATTORNEY | RATE | HOURS | TOTAL |
| --- | --- | --- | --- |
| Eric Venable | $250.00 | 7.8 | $1,950.00 |
| Patrick Venable | $125.00 | 14.8 | $1,850.00 |
| **TOTAL** | | | **$3,800.00** |

**4.  Costs**.

Although the United States Court of Appeals for the Eleventh Circuit apparently has not addressed what costs are recoverable pursuant to § 1132(g)(2), a number of district courts within the circuit have interpreted the provision as limiting costs to those recoverable pursuant to 28 U.S.C. § 1920.  *See Anderson v. Unum Life Ins. Co. of Am.*, No. 2:01cv894-ID, 2007 WL 604728, at *15 (M.D. Ala. Feb, 22, 2007)(and cases cited therein).

The plaintiffs seek an award of costs in the amount of $350.00 for reimbursement for the filing fee, $20.00 for the costs of serving process, and $10.64 for certified mail.  Venable Aff. ¶ 6.  Each of these costs, except for the costs of certified mail, are recoverable pursuant to 28 U.S.C. § 1920.  *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996)(postage costs are not recoverable). Therefore, the Court should award plaintiffs $370.00 in costs.

**V.  RECOMMENDATION.**

For the reasons stated above, I recommend that the Court do the following:

1.  **GRANT in part** Plaintiffs' Second Amended Motion for Entry of Final Judgment, Doc. No. 14;

2. **ORDER** Plaintiffs to submit prejudgment interest calculations as to delinquent contributions to the Apprenticeship Fund and Health Care Fund by a date certain;

3. **AWARD** Plaintiffs $3,800.00 as a reasonable attorney's fee and $370.00 in costs;

4. **DIRECT** the Clerk of Court to enter judgment in favor of Plaintiffs and against Champion Steel of Central Florida Corporation in the total amount of prejudgment interest, statutory penalties, attorney's fee and costs, and thereafter to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 10, 2009.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE